## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| v. | ) | Case No.  22-CR-00030-GKF |
| | ) | 24-CV-00447-GKF-SH |
| ASHTON NIKOEL MATTINGLY, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

### OPINION AND ORDER

This matter comes before the court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 62] of defendant/petitioner Ashton Nikoel Mattingly.  For the reasons set forth below, the motion is denied.

### Factual Background and Procedural History

This is an unusual case.  On January 4, 2021, L.J., Ms. Mattingly's two-month-old son, died. An investigation into his death followed and, on February 7, 2022, a federal grand jury returned an Indictment charging Ms. Mattingly with one count of Child Neglect in Indian Country pursuant to 18 U.S.C. §§ 1151 and 1153 (Count One) and Okla. Stat. tit. 21, § 843.5(C) and three counts of Tampering with Evidence by Corruptly Altering, Destroying, Mutilating, and Concealing Records and Other Objects pursuant to 18 U.S.C. § 1512(c)(1) (Counts Two, Three, and Four).  [Doc. 2].

Count One charged that Ms. Mattingly failed to provide L.J. adequate care.  Count Two charged that, on February 11, 2021, Ms. Mattingly made a recorded jail telephone call to then-boyfriend Chase Moore, instructing Mr. Moore to go to her residence and remove a white pill bottle with an orange cap "so the pill bottle would be unavailable as evidence in the investigation into the death of" L.J.  [Doc. 2, 2].  Similarly, Count Three charged that, on that same day in a subsequent recorded jail call, Ms. Mattingly instructed Mr. Moore to change the password for the Snapchat account associated with the username "kinikkim23" so the record therein would be unavailable as evidence into the investigation

of L.J.'s death. [*Id.* at 3]. Finally, Count Four charged that, in a recorded jail call of February 16, 2021, Ms. Mattingly instructed her mother, Pamela Mattingly, to falsely report to the service provider that her cellular telephone had been stolen and request that the service provider disable access so the record therein would be unavailable as evidence into the investigation of L.J.'s death. [*Id.* at 4].

Ms. Mattingly was arraigned on February 10, 2022, and a U.S. Magistrate Judge appointed Andrew Steed of the Federal Public Defender's Office for the Western District of Texas to represent her.[1] [Doc. 10; Doc. 11].

On February 24, 2022, defense counsel filed a motion for mental examination of defendant and, on March 7, 2022, a U.S. Magistrate Judge ordered that Ms. Mattingly be transported to a designated BOP facility for examination. [Doc. 24]. On May 27, 2022, the court received the medical forensic evaluation and, on June 8, 2022, a Magistrate Judge held a competency hearing and found Ms. Mattingly competent to stand trial. [Doc 29].

On June 13, 2022, Ms. Mattingly advised the court that she wished to plead guilty and, on July 25, 2022, Ms. Mattingly appeared before U.S. Magistrate Judge Susan E. Huntsman for a change of plea hearing. [Doc. 31; Doc. 37].[2] At the beginning of the July 25 hearing, Ms. Mattingly expressed her intent to plead guilty to Counts Two, Three, and Four of the Indictment. [Doc. 84, 2-3]. However, after Magistrate Judge Huntsman read Count Two as charged in the Indictment, Ms. Mattingly interrupted the proceedings, stating, "Umm . . . that wasn't supposed to be the plea that I signed, Your Honor." [*Id.* at 11]. Although both defense counsel and the Magistrate Judge explained that Judge Huntsman was simply reading the charge as set forth in the Indictment, Ms. Mattingly stated, "I wasn't

---

[1] Due to the influx of cases in this district in the wake of *McGirt v. Oklahoma*, 591 U.S. 894 (2020), the Federal Public Defender for the Northern District of Oklahoma had requested assistance from Federal Public Defender offices across the country.

[2] The change of plea hearing was reset three times, twice due to defense counsel's schedule. [Doc. 33; Doc. 35; Doc. 36].

aware that I was going to be – I – anything to do with my son is not supposed to be part of the deal with – at all because I'm not willing to sign anything to do – if he's . . . But I didn't hurt my son." [*Id.* at 12]. The court took a recess in order to permit Ms. Mattingly to consult with Mr. Steed and, subsequently, reset the change of plea hearing for July 27, 2022 at 9:45 a.m. [*Id.* at 12-13].

On July 26, 2022, the government filed an Information charging Ms. Mattingly with three counts of Tampering with Evidence by Corruptly Altering, Destroying, Mutilating, and Concealing Records and Other Objects pursuant to 18 U.S.C. § 1512(c)(1). [Doc. 40]. Count One and Count Two charged that, on February 11, 2021, Ms. Mattingly made telephone calls to Mr. Moore in which she requested that he remove a white pill bottle from her home and change the password for the Snapchat account associated with the username "kinikkim23," respectively, so that they would not be available as evidence "*in the investigation into Mattingly's possession, use, and distribution of controlled substances*." [*Id.* at 1-2 (emphasis added)]. Likewise, Count Three alleged that Ms. Mattingly instructed her mother to falsely report that defendant's cellular telephone was stolen and request that the provider disable access to same so that the record therein "would be unavailable as evidence in the investigation into Mattingly's possession, use and distribution of controlled substances." [*Id*. at 3].

On July 27, 2022, Ms. Mattingly was arraigned on the Information before Magistrate Judge Huntsman and entered a plea of guilty. [Doc. 42]. During the change of plea hearing, Magistrate Judge Huntsman advised that Ms. Mattingly had the right to plead not guilty and proceed to trial, where she would be presumed innocent. [Doc. 71, 14-15]. Ms. Mattingly confirmed that she understood her trial rights and wished to waive same. [*Id.* at 15].

Judge Huntsman then confirmed that a plea agreement existed in this matter. [Doc. 71, 18]. The Plea Agreement was made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Under its terms, Ms. Mattingly pled guilty to the three counts of Tampering with Evidence pursuant to § 1512(c)(1) as charged in the Information, and the parties agreed to a stipulated sentence of twelve to

fifteen years' imprisonment. [*Id.* at 18-19; Doc. 48]. In the Plea Agreement, the parties acknowledged that, "[t]his stipulated sentence departs upward from the anticipated guideline calculation for the violations to which the defendant is pleading guilty," but indicated that "[t]he parties have considered various factors in fashioning this sentence, including the defendant's acceptance of responsibility, the strength of the evidence, judicial economy, the interests of justice, and closure for the victim's family." [Doc. 48, 12]. The parties "agreed upon" the stipulated sentence "regardless of any advisory Sentencing Guidelines calculations." [*Id.* at 13]. As part of the agreement, the government agreed to dismiss all remaining counts and to not initiate additional criminal charges against Ms. Mattingly related to the conduct giving rise to the Information. [*Id.* at 8-9]. Ms. Mattingly initialed each page of the Plea Agreement. *See generally* [Doc. 48].

During the July 27, 2022 change of plea hearing, Ms. Mattingly confirmed that she had the opportunity to read the Plea Agreement and discuss it with Mr. Steed before signing it, and that she understood the terms of the Plea Agreement.[3] [Doc. 71, 19]. In response to Judge Huntsman's questions, Ms. Mattingly stated that no one had made her any other promises, guarantees, or representations to induce her to plead guilty and, further, that no one had attempted in any way to threaten her, her family, or anyone else in order to force her to plead guilty. [*Id.* at 19-20]. Ms. Mattingly confirmed that she was not being forced to plead guilty but, instead, that she was pleading guilty of her own free will because she was guilty. [*Id.* at 20].

Ms. Mattingly next affirmed that she understood that evidence tampering pursuant to § 1512(c)(1) carried a maximum penalty of twenty years imprisonment. [*Id.* at 22; *see also id.* at 5-6]. Magistrate Judge Huntsman questioned Ms. Mattingly as to whether she had discussed "the possible punishment, the facts of your case, and any possible defenses with your attorney," to which Ms.

---

[3] Likewise, Magistrate Judge Huntsman confirmed with Mr. Steed that he had discussed the Plea Agreement's terms with Ms. Mattingly. [*Id.* at 21].

Mattingly responded in the affirmative and, further, that she did not need any additional time to speak with counsel. [*Id.* at 24-25]. The Magistrate Judge then engaged in the following colloquy with Mr. Mattingly:

| | |
|---|---|
| **THE COURT**: | Okay. As [the assigned prosecutor] mentioned, you and the Government have entered into a binding plea agreement for a specific sentence of 12 to 15 years' imprisonment. Do you understand that the Court is not bound by the terms of this plea agreement, unless and until the Court accepts the plea agreement? |
| **THE DEFENDANT**: | Yes, Your Honor. |
| **THE COURT**: | Okay. And that's something that will happen at sentencing. It will not happen today. Do you understand that? |
| **THE DEFENDANT**: | Yes, Your Honor. |
| **THE COURT:** | Okay. Do you understand that if, at that point, the Court rejects the plea agreement and chooses not to follow these terms, that you will be given the opportunity to withdraw your plea of guilty? |
| **THE DEFENDANT**: | Yes, Your Honor. |

[*Id.* at 25]. Moreover, Magistrate Judge Huntsman questioned Ms. Mattingly as follows:

| | |
|---|---|
| **THE COURT**: | Okay. Have you had enough time to fully confer with your attorney? |
| **THE DEFENDANT**: | Yes, Your Honor. |
| **THE COURT**: | Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney? |
| **THE DEFENDANT**: | Yes, Your Honor. |
| **THE COURT:** | Do you believe he has fully considered the facts of your case, any defenses you may have to the charges, and any other issues that may affect your plea? |
| **THE DEFENDANT**: | Yes, Your Honor. |

[*Id.* at 27].  At the close of the hearing, Magistrate Judge Huntsman found Ms. Mattingly fully competent and capable of entering into an informed plea, as well as being aware of the charge and the consequences of the plea.  [*Id.* at 36].  Magistrate Judge Huntsman further found the plea of guilty to be knowing and voluntary.  [*Id.* at 37].

In advance of sentencing, the U.S. Probation Office for the Northern District of Oklahoma prepared a Presentence Investigation Report ("PSR").  The PSR identified Ms. Mattingly's Base Offense Level as 14, with a two level increase because the offense involved a substantial number of records, documents, or tangible objects, resulting in an Adjusted Offense Level of 16.  With a total three-level reduction for Acceptance of Responsibility pursuant to both U.S. SENT'G GUIDELINES MANUAL §§ 3E1.1(a) and 3.E1.1(b), Ms. Mattingly's Total Offense Level was 13.  Ms. Mattingly's Criminal History Category was a Roman Numeral I, resulting in a Guideline Range of 12 to 18 months.

On February 14, 2024, the court held a sentencing hearing in this matter.  [Doc. 56].  During the sentencing hearing, the court immediately questioned the parties as to why this case should not proceed to trial.  Mr. Steed explained that, in exchange for the government dismissing Count One, Ms. Mattingly had agreed to plead guilty to the Information.  [Doc. 68, 4-7].  Mr. Steed described Ms. Mattingly as looking at this situation "through different eyes than maybe lawyers would" and confirmed Ms. Mattingly would not plead guilty to Count One.  [*Id.* at 9].  Mr. Steed explained that the Plea Agreement would allow Ms. Mattingly to

> avoid exposure for life in prison but also get the help that she needs to be a clean and sober person, to be a mother to two daughters, to be somebody who is going to go through the federal system again and this time come out the strong person that she needs to be, that she wants to be, that I think at some basic level she already is.

[*Id.* at 12].[4]

---

[4] Ms. Mattingly's PSR indicated that she began using Adderall and Ritalin without valid prescriptions at the age of 21, and continued until her arrest.  Additionally, Ms. Mattingly admitted that she had smoked marijuana daily since the age of 21, used cocaine daily between 2018 and 2020, and began

The court next heard from Ms. Mattingly, who expressed her regret for her "mistakes." [*Id.* at 17]. At the close of her statement, Ms. Mattingly stated:

> I thank you for letting me have your time and thank you in advance for leniency on my case. I also just want to say, judge, that I really – I really need the 12 years, please. I need to go away for a while and work on myself and prison is the only place I can get better because I've had opportunities at rehabs and other places and I've never – I've never took that and I've never got better that way.

> I need this prison sentence of 12 years so I can become the person that I'm meant to be through the pain and grief that I have and learn who I can be as a mature adult, sir. Thank you.

[*Id.* at 18]. After a discussion with the court regarding her children, Ms. Mattingly again stated, "I just want to thank you for your time and just please grant the 12 years so I can get better for my family and my kids." [*Id.* at 21].

The court then heard from counsel for the government, who explained, "this is not about whether negligent or neglect homicide occurred, this is about the obstruction of such investigation. Now, she pled guilty to obstructing in three different ways a drug investigation, but that drug investigation is inextricably intertwined with the neglect investigation." [*Id.* at 23]. This is because it was the government's position that "evidence of drug use is evidence of neglect, that would move the needle with respect to the neglect investigation undoubtedly." [*Id.*]. Government's counsel further explained, "the core the theory is this, while at the time the defendant would not admit to anything relating to neglect, she would admit to obstruction of the drug investigation"; however, "obstructing an investigation on drugs is tantamount to obstructing the investigation on neglect, because that investigation of neglect would involve drugs." [*Id.* at 24.]. That is, "to obstruct or try to obstruct a drug investigation is also trying to obstruct the neglect investigation because using drugs while you're

---

using ecstasy, heroin, methamphetamine, Xanax, Roxicodone, and Fentanyl on a daily basis as early as 2019.

taking care of a child is neglect, and so finding those drugs, getting evidence of that is evidence of neglect and so that makes the obstruction even more important." [*Id.* at 27]; *see also* [*id.* at 28-29].

At the close of the sentencing hearing, the court accepted the Rule 11(c)(1)(C) Plea Agreement and sentenced Ms. Mattingly to a total term of imprisonment of 144 months, consisting of 144 months as to Counts 1 through 3 to run concurrently, each with the other. [Doc. 68, 44; Doc. 56; Doc. 57]. Ms. Mattingly did not appeal. [Doc. 58].

On September 9, 2024, the court received a letter from Ms. Mattingly in which she alleged that her attorney "forced [her] into taking a plea for 12-15 years without giving [her] legal advice," and that, when the PSR "came back with the guidelines of 12-18 months, [she] begged him to pull [the] plea." [Doc. 59, 1]. On September 16, 2024, the court received a second letter from Ms. Mattingly that included similar allegations. [Doc. 60].

Ms. Mattingly subsequently filed the instant § 2255 motion. [Doc. 62]. The court appointed counsel to represent Ms. Mattingly with respect to the § 2255 proceedings. [Doc. 66; Doc 75].[5]

The government responded in opposition. [Doc. 87]. Ms. Mattingly filed a reply wherein she requested an evidentiary hearing. [Doc. 92].

In addition to the reply, on May 27, 2025 and June 23, 2025, the court received *pro se* letters from Ms. Mattingly, as well as certain documents reflecting her completion of various programs and courses. *See* [Doc. 95; Doc. 96; Doc. 98]. The court has considered the briefs filed in this matter, as well as Ms. Mattingly's *pro se* letters.

Further, on September 9, 2025, the court held an evidentiary hearing as to Ms. Mattingly's motion. During the hearing, Ms. Mattingly offered her own testimony and the government presented

---

[5] The court initially appointed attorney Justin Lollman to represent Ms. Mattingly with respect to her § 2255 motion. [Doc. 66]. However, on December 4, 2024, the court granted Mr. Lollman's motion to withdraw and appointed attorney Robert D. Gifford. [Doc. 75].

Mr. Steed's testimony. [Doc. 99]. At the close of the hearing, the court took the motion under advisement.

**Testimony During September 9, 2025 Evidentiary Hearing**

During the hearing, Ms. Mattingly testified that, prior to entering a plea of guilty, she understood that her only options were to: (1) plead guilty pursuant to the Rule 11(c)(1)(C) agreement for a stipulated term of imprisonment of twelve to fifteen years[6], or (2) go to trial as to all counts of the Indictment. Ms. Mattingly stated that Mr. Steed did not discuss with her the option to plead guilty without a plea agreement and, further, she did not understand that she could plead guilty without a plea agreement to Counts Two, Three, and Four, and "dare" the government to go to trial as to Count One. Ms. Mattingly testified that it would have "greatly" affected her thinking if she understood her option to plead without a plea agreement or go to trial only as to Count One as it would have "opened doors" and "changed [her] options." She testified that she signed the Plea Agreement only because she believed that twelve to fifteen years was the best that she could get. Ms. Mattingly understood that Mr. Steed would argue for a twelve year sentence "because of her trauma."

However, Ms. Mattingly conceded that she did not understand that a blind plea would have been to the Indictment, rather than the Information. Further, Ms. Mattingly admitted that she was not willing to plead guilty to tampering with evidence related to the death of her son, as she "never tampered with anything" related to the investigation into her son's death. Ms. Mattingly testified that she "would never" plead guilty to the Child Neglect charge and, further, "would not have pled ever" to tampering related to her son's death.

---

[6] During the September 9 evidentiary hearing, Ms. Mattingly admitted that Mr. Steed explained to her the nature of a Rule 11(c)(1)(C) plea and she understood that the Rule 11(c)(1)(C) agreement was for twelve to fifteen years, which meant that her sentence would not be lower than twelve years, but could not be higher than fifteen years.

As to the executed Plea Agreement, Ms. Mattingly confirmed that she had read the Plea Agreement, reviewed it with Mr. Steed, and that she understood the Plea Agreement. Further, Ms. Mattingly affirmed that she had initialed every page of the Plea Agreement. Likewise, Ms. Mattingly confirmed that she had reviewed the Plea Petition and executed same via Zoom in advance of the hearing. Ms. Mattingly testified that no one threatened her to plead guilty and she "never was forced."

With respect to the PSR, Ms. Mattingly testified that Mr. Steed met her, in person, to go over the PSR. Ms. Mattingly stated that they did not discuss the PSR in its entirety, but that Mr. Steed hit the "bullet" or "main" points. Specifically, Ms. Mattingly admitted that Mr. Steed went over the Guidelines calculation of twelve to eighteen months included therein. Ms. Mattingly testified that was the first time that she was informed of her Guideline range, and she did not know her Guideline range when she pleaded guilty. Ms. Mattingly was not given a copy of the PSR to keep, and Ms. Mattingly testified that she did not personally read the PSR.

Ms. Mattingly testified that, after reviewing the PSR, in October of 2023, she told Mr. Steed that she wanted to withdraw her guilty plea, but he told her that she could not do so. Ms. Mattingly acknowledged that, during her sentencing hearing, she did not ask Judge Frizzell to withdraw her plea or for a Guideline sentence, but stated that it was because the living conditions at David L. Moss were so "rough" that she would "do anything" to get out. Further, Ms. Mattingly testified that she was under the influence of methamphetamine during the February 14, 2024 sentencing hearing.

Finally, Ms. Mattingly testified to an incident that occurred while she was detained pretrial at the Cimarron Correctional Facility wherein she had a sexual encounter with Captain Christian. Ms. Mattingly reported the incident to Mr. Steed, who contacted the U.S. Marshals. Ms. Mattingly was moved on February 9, 2023, to the David L. Moss Correctional Facility pursuant to the Prison Rape Elimination Act (PREA).

Mr. Steed then testified as to his understanding of how the case had "played out." Mr. Steed testified that it was his understanding that the Felony Information was part of the Rule 11(c)(1)(C) Plea Agreement, and that it was not an option for Ms. Mattingly to enter a blind plea to the Information. Rather, if Ms. Mattingly rejected the Plea Agreement, it was his understanding that Ms. Mattingly would have gone to trial on the Indictment as charged (with the tampering counts related to the investigation into L.J.'s death). Further, Mr. Steed testified to his understanding that Ms. Mattingly was unwilling to plead guilty to Child Neglect or tampering related to the investigation into L.J.'s death. Under the circumstances, Mr. Steed believed that a twelve-year term of imprisonment was "the best outcome in this case."

Mr. Steed confirmed that the Plea Agreement as to both the Indictment and Information included a stipulated sentence range of twelve to fifteen years. Mr. Steed testified that he had gone over the Plea Agreement with Ms. Mattingly page by page, they read it together, and Mr. Steed believed that Ms. Mattingly understood the agreement. Mr. Steed testified that, ultimately, it was Ms. Mattingly's decision whether to plead guilty, and he did not recall Ms. Mattingly asking to withdraw her guilty plea.

Further, Mr. Steed testified that he discussed with Ms. Mattingly her Guideline range if she plead guilty to the Indictment, including the Guideline's cross-reference with respect to the death of her son. Mr. Steed believed that Ms. Mattingly understood the cross-reference issue.

Apart from the Plea Agreement and Guidelines issues, Mr. Steed testified that he reviewed recorded jail telephone calls with Ms. Mattingly that the government had as evidence of tampering. Mr. Steed characterized the calls as "phone calls where she's recorded describing the activities that are part of the tampering allegations" and expressed concerned that the statements therein "could be characterized as admissions of her involvement in tampering." Mr. Steed testified that he also reviewed with Ms. Mattingly certain text messages obtained by the government from the night that L.J. died

wherein Ms. Mattingly expressed "suicidal ideations" and made statements that Mr. Steed was concerned the jury would interpret as threats to take L.J. with her.

Finally, Mr. Steed testified that, on the date of sentencing, he had no reason to be concerned that Ms. Mattingly was under the influence of methamphetamine.

### Analysis

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." In the § 2255 motion, Ms. Mattingly argues that trial counsel was ineffective in violation of her Sixth Amendment rights.[7]

To determine an ineffective assistance of counsel claim, the court applies the two-prong test articulated by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). *United States v. Barrett,* 797 F.3d 1207, 1213 (10th Cir. 2015); *see also Heard v. Addison*, 728 F.3d 1170, 1175 (10th Cir. 2013) (*Strickland* applies to § 2255 claims that "challeng[e] [a] guilty plea on the ground that [defendant/petitioner] was denied [the] Sixth Amendment right to effective assistance of counsel"). Pursuant to the *Strickland* test, first, the movant "must show that counsel's performance was deficient." *Strickland,* 466 U.S. at 687. Deficiency is "a demanding standard," *Barrett,* 797 F.3d at 1213, and requires the movant to show that defense counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-688; *see also id.* at 688 ("[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."). It "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

---

[7] The Sixth Amendment to the U.S Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

guaranteed the defendant by the Sixth Amendment," *Strickland,* 466 U.S. at 687, and this "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689.

Second, movant must demonstrate "that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687.   The prejudice showing requires movant to demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Barrett*, 797 F.3d at 1214 (quoting *United States v. Rushin,* 642 F.3d 1299, 1302 (10th Cir. 2011).  The Tenth Circuit has recognized that the "two [*Strickland*] prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012).

Upon review of Ms. Mattingly's filings, the court construes Ms. Mattingly to allege that defense counsel fell below the objective standard of reasonableness, and was therefore constitutionally deficient, for: (1) "forc[ing] [her] into signing the plea deal without any legal advice or counsel" [Doc. 59, 1; Doc. 62, 4 (Ground One), 5 (Ground Two)]; (2) refusing to file a motion to withdraw her guilty plea [Doc. 59, 1; Doc. 60, 1; Doc. 62, 5 (Ground Two); Doc. 95, 1]; and (3) advocating for a twelve year sentence that Ms. Mattingly did not want rather than seeking a Guideline sentence, and otherwise being an ineffective advocate on her behalf and failure to provide advice with respect to July 27, 2022 change of plea hearing and February 14, 2024 sentencing [Doc. 60, 1; Doc. 62, 7 (Ground Three); Doc. 95, 1].  The court separately considers each ground.

A.      *Acceptance of Plea Deal "Without Any Legal Advice or Counsel"*

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  "Where, as here, a defendant is represented by counsel during the plea process and enters

13

his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill,* 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also United States v. Spaeth*, 69 F.4th 1190, 1211 (10th Cir. 2023) (quoting *Hill*, 474 U.S. at 54-55) ("In the plea context, the cornerstone of ineffectiveness is whether the plea was involuntary because plea counsel's advice was below 'the range of competence demanded of attorneys in criminal cases.'"). "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill*, 474 U.S. at 58.

In her written filings, Ms. Mattingly alleges that Mr. Steed "forced [her] into signing the plea deal without any legal advice or counsel," "never explained other choices," and "scared [her] into th[e] decision" to change her plea. [Doc. 62, 4-5]. But Ms. Mattingly's allegations in this regard have evolved throughout the course of this proceeding. Accordingly, the court endeavors to address each of her allegations.

### 1.   Being "Forced" or "Scared" Into Accepting the Plea Agreement

As previously stated, Ms. Mattingly alleges that Mr. Steed "forced" or "scared" her into accepting the Plea Agreement. However, these allegations are contradicted by Ms. Mattingly's contemporaneous statements during the change of plea hearing as well as her more recent testimony, given under oath during the evidentiary hearing, wherein she testified that no one had threatened or forced her to plead guilty. Specifically, during the July 27, 2022 change of plea hearing, Ms. Mattingly affirmed that no one "attempted in any way to threaten [her], [her] family, or anyone else in an effort to force [her] to plead guilty," that she was not being forced to plead guilty, and that she was pleading guilty of her own free will. [Doc. 71, 20]. And, during the September 9, 2025 evidentiary hearing, Ms. Mattingly stated, "I never was forced, ma'am." Thus, the court construes Ms. Mattingly's claim in this regard to be abandoned.

Alternatively, Ms. Mattingly's claim is denied. The Tenth Circuit has recognized that "[c]oercion by the accused's counsel can render a plea involuntary." *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) (quoting *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988)). However, "strongly urg[ing]" a defendant to change her plea where counsel believes it to be in the defendant's best interest does not constitute deficient performance. *Fields,* 277 F.3d at 1216; *see also United States v. Carr,* 80 F.3d 413, 417 (10th Cir. 1996) (pressure from defense counsel in calling defendant "stupid" and a "f*****g idiot" for refusing to accept plea "d[id] not vitiate the voluntariness of his plea"); *Velarde v. Archuleta,* 640 F. App'x 740, 745 (10th Cir. 2016) (pressure from trial counsel in the form of explaining "dire situation" where "best choice was not an attractive one" was not deficient). Mr. Steed both averred and testified that he consulted with Ms. Mattingly regarding the Plea Agreement, but did not force her to accept it. *See* [Doc. 81-1]. Further, Mr. Steed testified to his belief that twelve years was the "best outcome" in this case. Ms. Mattingly offers no evidence that Mr. Steed's representation exceeded "strongly urg[ing]" her to accept the Plea Agreement given her circumstances and therefore Ms. Mattingly fails to demonstrate deficient performance in this regard. *See Fields,* 277 F.3d at 1213. Thus, Ms. Mattingly's claim that she was "forced" or "scared" into pleading guilty is abandoned or, alternatively, denied.

2.    "Better" Plea Deal

In her written filings, Ms. Mattingly also suggests that she was prejudiced in that she did not receive a "better" plea agreement. *See* [Doc. 62, p. 7 ("I stated I wanted a new plea and wanted the less amount of time possible.")]. However, the Tenth Circuit has stated "it is open to significant doubt whether the better-plea theory is a cognizable theory of *Strickland* prejudice." *United States v. Dominguez,* 998 F.3d 1094, 1116-17 (10th Cir. 2021). Regardless, Ms. Mattingly has offered no evidence that the government would have given her a "better" plea agreement—*i.e.,* a plea agreement to a lesser term of imprisonment. "Without more than sheer speculation and conjecture suggesting that

15

it was reasonably probable that the government would have given [her] a more favorable plea agreement, [Ms. Mattingly's] better-plea theory of prejudice must fail." *Dominguez,* 998 F.3d at 1118.

### 3.   Inadequate Explanation

The U.S. Supreme Court has recognized the "critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010). As previously stated, Ms. Mattingly contends that Mr. Steed did not adequately explain the Plea Agreement or her options with respect to same. The court separately considers Ms. Mattingly's contention that counsel was deficient in explaining: (1) the Plea Agreement; and (2) her options.

### a.   Explanation of the Plea Agreement

In her written filings, Ms. Mattingly alleges that she "didn't get the proper guidance on my plea terms or what all it meant." [Doc. 98, 1]. However, during the July 27, 2022 change of plea hearing, Ms. Mattingly stated, under oath, that she had the opportunity to read the Plea Agreement and discuss it with Mr. Steed, that she understood the terms of the Plea Agreement, and that she was pleading guilty of her own free will. [Doc. 71, 19-20]. Ms. Mattingly also initialed each page of the Plea Agreement, indicating that she had read the Plea Agreement and understood it. [Doc. 48]. Likewise, Mr. Steed confirmed that he had discussed the Plea Agreement's terms with Ms. Mattingly. [Doc. 71, 21]; *see also* [Doc. 81-1, p. 1].

Further, during the change of plea hearing, Magistrate Judge Huntsman advised Ms. Mattingly of her right a trial by jury where she would be presumed innocent, as well as her other trial rights, and Ms. Mattingly confirmed that she wished to waive those rights. [Doc. 71, 14-15]. Magistrate Judge Huntsman further advised that the Plea Agreement included a stipulated sentence of twelve to fifteen years imprisonment, in exchange for which the government would dismiss the Indictment and bring no additional charges against Ms. Mattingly related to the conduct. [*Id.* at 18-21]. Ms. Mattingly confirmed that she understood that § 1512(c) provides a twenty-year maximum statutory term of

imprisonment.  [*Id.* at 5, 22].  After being so advised, Ms. Mattingly affirmed that she wished to plead guilty and did not require additional time to speak with defense counsel.  [*Id.* at 19-25].

Further, during the September 9, 2025 evidentiary hearing, Mr. Steed testified that he and Ms. Mattingly read the Plea Agreement together, going over it page by page, and that he believed that she understood the Agreement.  Further, Ms. Mattingly conceded that she had understood that the Plea Agreement was made pursuant to Rule 11(c)(1)(C) for a stipulated sentence of twelve to fifteen years imprisonment, and that Mr. Steed explained the binding nature of a Rule 11(c)(1)(C) Agreement to her.

Under *Strickland*, deficiency is "a demanding standard," *Barrett,* 797 F.3d at 1213, and the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland,* 466 U.S. at 689.  During the July 27, 2022 change of plea hearing, Ms. Mattingly confirmed that she had discussed the Plea Agreement with Mr. Steed and understood same.  She did not testify to the contrary during the September 9, 2025 evidentiary hearing and, further, Mr. Steed's testimony that he explained the Plea Agreement to her is entirely credible. Ms. Mattingly's self-serving written assertions to the contrary are not persuasive.  Based on the evidence, and applying the presumption in favor of reasonable professional assistance, Ms. Mattingly has not demonstrated that Mr. Steed failed to adequately advise her as to the *Plea Agreement's* terms.

However, Ms. Mattingly asserts that, although she understood her stipulated sentence, she did not understand the applicable Sentencing Guidelines.  Specifically, Ms. Mattingly asserts that she did not understand that her Guideline range was twelve to eighteen months until October of 2023 when she reviewed the PSR with Mr. Steed.

Ms. Mattingly's contentions are belied by the Petition to Enter Plea of Guilty wherein Ms. Mattingly affirmed that she had discussed the sentencing guidelines with her attorney.  [Doc. 47, 2]. Further, Ms. Mattingly acknowledged that "sentencing [was] a matter left exclusively in the province of the Court" and "the sentence imposed by the Court may be within the guideline table range provided

by law or, for good cause stated, the Court may depart therefrom after all relevant facts and circumstances of my case have been considered by the Court, or the Court may impose a non-guideline sentence." [*Id.* at 6]. Further, in the Plea Agreement, Ms. Mattingly acknowledged that the twelve to fifteen year "stipulated sentence departs upward from the anticipated guideline calculation for the violations to which the defendant is pleading guilty," but agreed to the sentence "regardless of any advisory Sentencing Guidelines calculations." [Doc. 48, 12-13]. Finally, Mr. Steed testified he discussed Ms. Mattingly's Guidelines range with her, including a potentially applicable cross-reference, and displayed obvious competence regarding the Sentencing Guidelines.[8]

Given Ms. Mattingly's contemporaneous statements, and based on Mr. Steed's testimony and obvious proficiency with the Sentencing Guidelines, the court finds that Mr. Steed advised Ms. Mattingly regarding the operation of the Guidelines. Ms. Mattingly's statements to the contrary lack credibility. *See United States v. Chavez*, 862 F.2d 1436, 1438-39 (10th Cir. 1988) ("[F]indings based on the credibility of witnesses are the special province of the trial court.").

Regardless, even if Mr. Steed did not advise Ms. Mattingly that her Guideline range may be as low as twelve to eighteen months, "a miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993); *see also United States v. Figueroa-Espinoza,* No. 21-4140, 2023 WL 2904943, at *9 (10th Cir. Apr. 12, 2023) (unpublished) (no deficient performance where defendant alleged that counsel advised that Guidelines range under two options were roughly the same, when they were not); *United States v. Dixon*, 501 F. App'x 803,

---

[8] Ms. Mattingly does not contend that Mr. Steed "failed to understand the basic structure and mechanics of the sentencing guidelines and was therefore incapable of helping [her] make reasonably informed decisions throughout the criminal process." *United States v. Washington*, 619 F.3d 1252, 1260 (10th Cir. 2010). Further, given Mr. Steed's demonstrated proficiency with the Sentencing Guidelines, such claim would fail.

805 (10th Cir. 2012) (unpublished) (allegations that counsel failed to warn defendant that he might receive a sentence above the Guidelines range was not deficient performance).[9]

Nor can Ms. Mattingly demonstrate prejudice. Here, the Plea Agreement explicitly informed Ms. Mattingly that "the sentence to be imposed upon the defendant will be determined solely by the sentencing judge" and, further, that the "stipulated sentence [of twelve to fifteen years] departs upward from the anticipated guideline calculation for the violations to which the defendant is pleading guilty." [Doc. 48, 12]. Likewise, during the July 27, 2022 change of plea hearing, Magistrate Judge Huntsman advised Ms. Mattingly that, although the Plea Agreement included a stipulated sentence of twelve to fifteen years, the court was not bound by the agreement until accepted and that, if the court rejected the agreement but Ms. Mattingly moved forward with her guilty plea, the court "may impose a more severe sentence than the agreement states." [Doc. 71, 25-26]. *See United States v. Landsaw*, 206 F. App'x 773, 776 (10th Cir. 2006) (no prejudice where, despite erroneous advice of counsel, the plea agreement and plea colloquy informed defendant that the sentence might be different than expected); *United States v. Craig*, 733 F. App'x 417, 419 (10th Cir. 2018).

Based on the foregoing evidence, and applying the presumption in favor of reasonable professional assistance, the court concludes that any alleged deficiencies in Mr. Steed's advice with respect to the Guidelines did not amount to constitutionally ineffective representation. Nor has Ms. Mattingly demonstrated that she was prejudiced as a result. Thus, Ms. Mattingly's § 2255 claim fails insofar as she contends that defense counsel failed to adequately advise her regarding the terms of the Plea Agreement.

b.    Advising of Other Potential Options

During the September 9, 2025 evidentiary hearing, Ms. Mattingly specifically argued that Mr.

---

[9] "Unpublished decisions are not precedential but may be cited for their persuasive value." 10th Cir. 32.1(A).

Steed was constitutionally deficient in failing to advise her of the advantages and disadvantages of the Plea Agreement versus the potential for: (1) entering a blind plea as to the Indictment (that is, pleading guilty without a plea agreement), or, alternatively, (2) the possibility that she could plead guilty as to *the elements* of Count Two through Four without admitting the nature of the "official proceeding"[10] and force the government to proceed to trial as to Count One.   The court does not determine whether Mr. Steed's performance was constitutionally deficient in this regard as Ms. Mattingly fails to satisfy *Strickland*'s prejudice component.   *See Hooks*, 689 F.3d at 1186.

The possibility of entering a blind plea as to the entirety of the Indictment is easily dispensed with.  Ms. Mattingly has repeatedly stated that she was unwilling to plead guilty to Count One – Child Neglect or any charge related to L.J.'s death.  Because Ms. Mattingly admits that she was unwilling to plead guilty to Count One, she cannot demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Barrett*, 797 F.3d at 1214.  Thus, Ms. Mattingly fails to satisfy *Strickland*'s second prong and her § 2255 claim in this regard fails.

The court next turns to Ms. Mattingly's contention that Mr. Steed should have advised her of the possibility that she could plead guilty to *the elements* of Count Two through Four of the Indictment without admitting the nature of the "official proceeding."  According to Ms. Mattingly's theory, during the plea colloquy, Ms. Mattingly would admit that she tampered with evidence with the intent to impair an "official proceeding," but makes no statements as to whether the "official proceeding" related to a drug investigation or the investigation into L.J.'s death. Ms. Mattingly suggested that, in doing so, she

---

[10] As previously stated, Counts Two through Four of the Indictment charged Ms. Mattingly with Tampering with Evidence by Corruptly Altering, Destroying, Mutilating, and Concealing Records and Other Objects pursuant to 18 U.S.C. § 1512(c)(1).  Section 1512(c)(1) provides, "[w]hoever corruptly[] alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both."

would "dare" the government to move forward as to Count One and set up a "battle" at sentencing as to the appropriate Guideline range and sentence.

Ms. Mattingly contends that the nature of the "official proceeding" is not an element of a § 1512(c) offense. Regardless of the accuracy of Ms. Mattingly's position, Counts Two through Four of the Indictment specifically alleged that Ms. Mattingly tampered with evidence such that it "would be unavailable as evidence in the investigation into the death of Mattingly's two-month-old son, L.J." [Doc. 2, 2-4]. "[A] defendant who makes a counseled and voluntary guilty plea admits both the acts described in the indictment and the legal consequences of those acts." *United States v. Allen*, 24 F.3d 1180, 1183 (10th Cir. 1994) (internal footnote omitted) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)); *see also Broce,* 488 U.S. at 570 ("By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."). Thus, "[a]n unconditional plea of guilty is an admission of all material facts alleged in the charge"—that is, "[a]n unconditional plea admitted all material allegations *already contained* in the . . . indictment." *United States v. Brown*, 164 F.3d 518, 521 (10th Cir. 1998); *see also United States v. Garcia-Castillo*, 127 F. App'x 385, 391-92 (10th Cir. 2005) (unpublished) ("A defendant who pleads guilty admits to all of the factual allegations contained in the indictment."); *United States v. Johnson*, 108 F.3d 341, at *2 (10th Cir. 1997) (unpublished table decision). As previously stated, the Indictment specifically alleged that the tampering related to the investigation into L.J.'s death. Even if the nature of the official proceeding was not an element of the § 1512(c) offense, because the Indictment "went beyond the requisite statutory elements by specifying the type of [official proceeding] involved[,] . . . subsequent (re)litigation of the issue" was precluded. *United States v. Glover,* 97 F.3d 1345, 1347 (10th Cir. 1996); *see also Brown,* 164 F.3d at 521-22 (rejecting defendant's argument that, because he was "very careful" not to admit jurisdictional facts during change of plea, subject matter jurisdiction had not been admitted because "the strategy failed to realize the unconditional plea admitted all material

allegations already contained in the superseding indictment," including jurisdictional allegations); *Garcia-Castillo*, 127 F. App'x at 391-92; *Johnson,* 108 F.3d at *2. That is, by pleading guilty to Counts Two through Four of the Indictment, Ms. Mattingly would *necessarily* admit that the tampering was so that the evidence would be unavailable in the investigation into L.J.'s death. Ms. Mattingly could not avoid such admission through a blind plea. Because Ms. Mattingly's proposal presents a legal impossibility, Mr. Steed's failure to advise her of same was reasonable under the circumstances and not deficient.

Insofar as Ms. Mattingly contends that Mr. Steed was deficient in failing to advise her of the potential of entering a blind plea to Counts Two through Four *as charged* (not just the elements), Ms. Mattingly has not demonstrated prejudice. As previously stated, Counts Two through Four alleged that Ms. Mattingly tampered with evidence such that it "would be unavailable as evidence in the investigation into the death of Mattingly's two-month-old son, L.J." [Doc. 2, 2-4]. On July 25, 2022, Ms. Mattingly refused to plead guilty to Counts Two through Four as charged, stating, "anything to do with my son is not supposed to be part of the deal with – at all because I'm not willing to sign anything to do – if he's . . . But I didn't hurt my son." [Doc. 84, 12]. Likewise, during the September 9, 2025 evidentiary hearing, Ms. Mattingly reiterated that she was unwilling to plead guilty to tampering with evidence related to the investigation into L.J.'s death. Based on Ms. Mattingly's own admissions, it is clear that the results of the proceedings would not have changed had she been advised of the potential to enter a blind plea as to Counts Two through Four of the Indictment as charged.

Finally, Ms. Mattingly's suggestion that she could have entered a blind plea to the Information also fails. During the September 9 evidentiary hearing, Mr. Steed testified to his understanding that the Information was tied to the Rule 11(c)(1)(C) Plea Agreement and, had Ms. Mattingly rejected the plea offer, she would have been proceeding to trial on the Indictment *as charged*. This is consistent with Tenth Circuit case law. *See United States v. Cruz-Lopez,* 357 F. App'x 193, 197-98 (10th Cir.

2009) (unpublished) (superseding information); *see also United States v. Bowen*, 946 F.2d 734, 736 (10th Cir. 1991) ("We have found no authority which supports the proposition that a superseding indictment zaps an earlier indictment to the end that the earlier indictment somehow vanishes into thin air."). And Ms. Mattingly offers no evidence to the contrary. Because Ms. Mattingly has not shown that entering a blind plea to the Information was a possibility, Ms. Mattingly has not demonstrated a reasonable probability that, but for any alleged deficiency in defense counsel's representation, the results of the proceedings would have been different. Thus, Ms. Mattingly has not satisfied *Strickland*'s second prong.

### 4.    Proceed to Trial

Finally, the court must consider the possibility that, had she been properly advised, Ms. Mattingly would have rejected the Rule 11(c)(1)(C) Plea Agreement and proceeded to trial. *See* [Doc. 92 (suggesting that Ms. Mattingly may have gone to trial on the Indictment)].

In such circumstances, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome' which necessitates a 'substantial,' not just 'conceivable,' likelihood of a different result." *Dominguez,* 998 F.3d at 1111 (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). Additionally "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. Of this requirement, the Tenth Circuit has stated,

> In our view, that statement [in *Padilla*] suggests an objective *floor*, somewhere below *Hill*'s more demanding requirement that the defendant show "a *reasonable probability* that" he would have gone to trial absent counsel's errors. In other words, we understand the Court's pronouncement in *Padilla* to mean that in determining whether this counsel's ineffectiveness was prejudicial, we should first ask whether going to trial would have been objectively "rational under the circumstances"; however, after a petitioner has met this objective threshold of rationality in proceeding to trial, we see no

23

reason to blind ourselves to the individual defendant's statements and conduct when ascertaining whether he has satisfied the more demanding "reasonable probability" threshold articulated in *Hill*.

*Heard v. Addison,* 728 F.3d 1170, 1184 (10th Cir. 2013) (internal citation omitted).

Looking first to whether rejecting the Plea Agreement would have been rational under the circumstances, the court may consider "the likelihood that [defendant] would have been convicted if [s]he had proceeded to trial," as well as the potential sentencing alternatives and statutory penalties associated with the charges. *Dominguez*, 998 F.3d at 1113-14; *see also United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022) (quoting *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001)) ("When conducting the prejudice inquiry, courts 'will often review the strength of the prosecutor's case as the best evidence of whether defendant in fact would have changed his plea and insisted on going to trial.'"); *United States v. Etuk*, No. 23-5011, 2023 WL 6060327, at *2 (10th Cir. Sept. 18, 2023) (internal citation and quotations omitted) (unpublished) ("A defendant must persuade us that going to trial would have been rational in light of the objective circumstances of his case. This may involve factors such as unmade but available legal and evidentiary arguments, the weight of the evidence against the defendant, the risk of an unsympathetic jury, and sentencing exposure."). The court first considers Ms. Mattingly's sentencing exposure.

Count One, Child Abuse in Indian Country, is not listed in the Guideline's statutory index. Thus, pursuant to U.S.S.G. §2X5.1, the court must apply the "most analogous offense guideline," but, "if there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control." The parties do not suggest an analogous guideline nor has the court identified a sufficiently similar provision. Thus, the provisions of 18 U.S.C. § 3553 control, including its provision that the court must consider the kinds of sentence established for the violation. *See* 18 U.S.C. § 3553(a)(3)-(4). With respect to Child Neglect, title 21, § 843.5 of the Oklahoma statutes provides a maximum term of life

imprisonment.  *See* Okla. Stat. tit. 21, § 843.5(C).  Thus, had Ms. Mattingly rejected the Rule 11(c)(1)(C) Plea Agreement and proceeded to trial, she exposed herself to a potential life sentence.

Ms. Mattingly also potentially faced exposure to life imprisonment through Counts Two, Three, and Four of the Indictment.  U.S. SENT'G GUIDELINES MANUAL § 2J1.2 generally applies to Obstruction of Justice and violations of § 1512(c).  The section includes a cross-reference to §2X3.1 where the offense involved obstructing the investigation or prosecution of a criminal offense and the resulting offense level is greater than that determined by U.S.S.G. §2J1.2.  Pursuant to U.S.S.G. §2X3.1, the base offense level shall be six levels lower than the offense level of the underlying offense, except that the Guideline shall not be less than level four.  Thus, under the cross-reference, the court must "therefore determine which offense [defendant] obstructed, find the appropriate guideline for that offense, use that guideline's base-offense level, and then subtract six."  *United States v. Pennington,* 78 F.4th 955, 964 (6th Cir. 2023).

As previously stated, the Indictment charged Ms. Mattingly with tampering to make certain evidence unavailable "in the investigation into the death of Mattingly's two-month-old son," L.J.  Thus, the tampering charges involved obstructing the investigation of a criminal offense—specifically, child neglect.  The cross-reference at §2X3.1 therefore applies, and Ms. Mattingly's base offense level would have been six levels lower than the offense level of the underlying offense—*i.e.,* Child Neglect.[11] However, as previously stated, there is no applicable Guideline provision as to Child Neglect, only a statutory maximum of life imprisonment.  Thus, if the court applied the §2X3.1 cross-reference, Ms. Mattingly risked exposure to a maximum term of life imprisonment as to Counts Two through Four.[12]

---

[11] During the September 9, 2025 evidentiary hearing, Ms. Mattingly did not argue that, even if convicted of tampering related to the investigation into L.J.'s death, the §2X3.1 cross-reference was inapplicable.

[12] Further, Mr. Steed testified that he advised Ms. Mattingly, and that she understood, that, by pleading to the *Information*, it was possible she would get a Guideline range that was lower than twelve to fifteen

And, regardless, § 1512(c) includes a twenty-year statutory maximum—eight years more than the low-end of the Plea Agreement's stipulated sentencing range.  *See* 18 U.S.C. § 1512(c).

The court next turns to the strength of the government's case—or the likelihood that Ms. Mattingly would have been convicted.  As an initial matter, the evidence against Ms. Mattingly as to Counts Two through Four was very strong.  Specifically, in a February 11, 2021 recorded jail call, Ms. Mattingly asked her then-boyfriend Mr. Moore to find and destroy a pill bottle.  In a subsequent phone call with Mr. Moore of that same day, Ms. Mattingly asked Mr. Moore to have his mother log into Ms. Mattingly's Snapchat account, change the password, and log back out so that "the Feds" could not get to it.  Finally, in a third recorded call that day, Ms. Mattingly asked her mother to call U.S. Cellular and report her phone as stolen so that everything would be disabled.  Ms. Mattingly indicated that she wanted the phone shut off because the FBI had her phone.  *See* [Doc. 52-7, 2-3].  The jail calls constitute strong evidence of Ms. Mattingly's involvement in the charged tampering. Moreover, Ms. Mattingly has offered no viable defenses to those charges.  Thus, it appears very likely that Ms. Mattingly would have been convicted at trial of Counts Two through Four.

Further, the evidence as to Count One was not as scant as suggested by Ms. Mattingly.  Ms. Mattingly cites the Office of the Chief Medical Examiner's Autopsy Report identifying "Sudden Unexplained Infant Death" as L.J.'s cause of death.  [Doc. 52-8, 2].  However, in that same report, the Medical Examiner identified L.J.'s manner of death as "undetermined" and stated that "the possibility of foul play [cannot] be entirely ruled out."  [*Id.* at 9].  Moreover, in text messages of January 4, 2021—the date of L.J.'s death—Ms. Mattingly expressed suicidal ideations and suggested that she may take L.J. with her.  Mr. Steed acknowledged the text messages were "an important part of the government's

---

years because "ideally" there would be no cross-reference to L.J.'s death in the PSR.  However, Mr. Steed testified "that's not a guarantee" and he was worried that Probation would cross-reference L.J.'s death *even with respect to the Information*.

case" and expressed concern as to how the jury would take them. Under the circumstance, a reasonable probability existed that a jury may have convicted Ms. Mattingly of Count One – Child Neglect.

Based on the foregoing, a high probability existed that Ms. Mattingly would have been convicted at trial, particularly with respect to Counts Two through Four. Further, the Plea Agreement minimized Ms. Mattingly's sentencing exposure as, absent the agreement for a stipulated sentence of twelve to fifteen years, Ms. Mattingly was potentially exposed to a term of life imprisonment. Without the Plea Agreement, Ms. Mattingly was exposed to the twenty-year statutory maximum if convicted only of Counts Two through Four. By virtue of the Plea Agreement, Ms. Mattingly was guaranteed a sentence of twelve to fifteen years, regardless of the Guidelines (including the cross reference). Accordingly, the Plea Agreement was advantageous to Ms. Mattingly and, under the circumstances, Ms. Mattingly has not shown that it would have been rational for her to reject the Rule 11(c)(1)(C) Plea Agreement. Thus, Ms. Mattingly fails to demonstrate prejudice.

Based on the foregoing, Ms. Mattingly's § 2255 claim fails insofar as it is premised on assertions that defense counsel "forced [her] into signing the plea deal without any legal advice or counsel" and "never explained other choices" (Ground One of the motion).

>   B.    *Withdrawal of Plea*

As previously stated, Ms. Mattingly next asserts that Mr. Steed was constitutionally ineffective because he refused to file a motion to withdraw the guilty plea [Doc. 59, 1; Doc. 60, 1; Doc. 62, 5 (Ground Two); Doc. 95, 1]. In an unpublished decision, a Tenth Circuit panel indicated that, when a § 2255 claim relates to withdrawal of a guilty plea, the relevant question is "whether [defendant] could have successfully withdrawn [her] plea." *Brooks v. Archuleta*, 621 F. App'x 921, 925 (10th Cir. 2015) (unpublished); *see also United States v. Rice*, 450 F. App'x 746 (10th Cir. 2011).

Pursuant to Federal Rule of Criminal Procedure 11, "after the court accepts the plea, but before it imposes sentence," a defendant may withdraw a plea of guilty if "the defendant can show a fair and

just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Tenth Circuit has articulated the following factors, known as the "Yazzie" factors, to determine whether a defendant has presented a "fair and just reason" for withdrawal:

> (1) whether the defendant has asserted [her] innocence; (2) whether withdrawal would prejudice the government; (3) whether [she] delayed in filing [the] motion, and if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to [her]; (6) whether [her] plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Dominguez,* 998 F.3d at 1103 (quoting *United States v. Yazzie,* 407 F.3d 1139, 1142 (10th Cir. 2005)). Generally, "[a] defendant's dissatisfaction with the length of [her] sentence generally is insufficient reason to withdraw a plea." *United States v. Elias,* 937 F.2d 1514, 1520 (10th Cir. 1991).

Further, "[w]here the district court complies with Rule 11 and conducts a thorough plea colloquy, in which the defendant affirmatively indicates he understands his plea and its direct consequences . . . such 'solemn declarations made in open court carry a strong presumption of verity.'" *Dominguez,* 998 F.3d at 1106 (quoting *United States v. Sanchez-Leon,* 764 F.3d 1248, 1259 (10th Cir. 2014)). Thus, "the truth and accuracy of [a defendant's] statements made at the Rule 11 proceedings should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of [her] Rule 11 statements.'" *Dominguez,* 998 F.3d at 1106 (quoting *Hedman v. United States,* 527 F.3d 20, 22 (10th Cir. 1975)).

Looking to the first *Yazzie* factor, Ms. Mattingly has never asserted that she was innocent of the Information. Rather, Ms. Mattingly conceded that her guilt to tampering with evidence related to a drug investigation, both during the July 27, 2022 change of plea and the September 9 evidentiary hearing. Thus, the first factor weighed against withdrawal.

Turning to the second factor, permitting Ms. Mattingly to withdraw her guilty plea would have prejudiced the government. If Ms. Mattingly had been allowed to withdraw her plea, the government

would have been forced to undergo the timely, and potentially difficult, process of again locating and preparing witnesses, nearly three years after the charged crime.  Further, the government would have to set aside other cases to prepare this case for trial.  *See United States v. Jones*, 168 F.3d 1217, 1220 (10th Cir. 1999).  For similar reasons, the fourth factor would have weighed against withdrawal, as permitting Ms. Mattingly to withdraw her plea would have substantially inconvenienced the court given that the court's trial docket was (and remains) overwhelmed in the aftermath of the *McGirt* decision and then-ongoing judicial vacancies.

Looking to the third factor, the delay in filing the motion, Ms. Mattingly changed her plea on July 27, 2022; however, Ms. Mattingly testified that she did not ask Mr. Steed to file a motion to withdraw her plea until October of 2023—over a year later.  Thus, the third factor weighed against withdrawal.  *See United States v. Vasquez-Lebron*, 106 F. App'x 703, 705 (10th Cir. 2004) (delay of nearly one year weighed against withdrawal).

As to the fifth factor, close assistance of counsel, for the reasons discussed above with respect to Ms. Mattingly's first § 2255 ground, Ms. Mattingly has not demonstrated ineffective assistance of counsel.  *See Dominguez,* 998 F.3d at 1103 (collecting cases applying *Strickland*'s ineffective assistance of counsel standard to close assistance of counsel inquiry).  Thus, the fifth *Yazzie* factor weighed against permitting Ms. Mattingly to withdraw her guilty plea.

The sixth factor—whether the plea was knowing and voluntary—is significant.  As previously stated, "for a plea to be knowing and intelligent, the defendant 'must have a full understanding of what the plea connotes and of its consequence.'"  *Dominguez*, 998 F.3d at 1105 (quoting *Marceleno*, 819 F.3d at 1276).  The Tenth Circuit has stated:

> Where the district court complies with Rule 11 and conducts a thorough plea colloquy, in which the defendant affirmatively indicates he understands his plea and its direct consequences . . . we have recognized that such solemn declarations made in open court carry a strong presumption of verity.  Indeed, we have concluded that the truth and accuracy of [a defendant's] statements made at the Rule 11 proceedings should be

regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements.

*Dominguez,* 998 F.3d at 1106 (internal citations and quotations omitted).

As discussed above, Ms. Mattingly was adequately advised of the terms of the Plea Agreement and its effect. Further, during the July 27, 2022 plea colloquy, Ms. Mattingly stated, under oath, that she had the opportunity to read and discuss the Plea Agreement with Mr. Steed before signing it. Ms. Mattingly affirmed that she understood the terms of the Plea Agreement and specifically confirmed her understanding that she had entered into a binding plea agreement for a stipulated sentence of twelve to fifteen years imprisonment. [Doc. 71, 19, 25]. Further, Ms. Mattingly confirmed that no one had threatened her, she was not being forced to plead guilty, and she was pleading guilty of her own free will. [*Id.* at 20]. Ms. Mattingly's declarations during the plea colloquy are entitled the presumption of veracity and constitute evidence that Ms. Mattingly's change of plea was knowing and voluntary. Thus, the sixth *Yazzie* factor weighed against permitting Ms. Mattingly to withdraw her guilty plea.

Finally, permitting Ms. Mattingly to withdraw her plea would result in a waste of judicial resources. As previously stated, permitting withdrawal would result in a jury trial and all the attendant administration. The court would have to call a juror panel, prepare jury instructions, and spend multiple days trying this case, despite Ms. Mattingly having previously pleaded guilty. Further, based on the government's proffer, it appears likely that Ms. Mattingly would be convicted, particularly with respect to Counts Two through Four of the Indictment. *See United States v. Carr*, 80 F.3d 413, 421 n.5 (10th 1996). Thus, the seventh and final *Yazzie* factor weighed against permitting Ms. Mattingly to withdraw her guilty plea.

Based on the foregoing, on balance, the *Yazzie* factors weighed against permitting Ms. Mattingly to withdraw her guilty plea. As previously stated, "[Ms. Mattingly's] dissatisfaction with the length of [her] sentence" is insufficient. *Elias,* 937 F.2d at 1520. Ms. Mattingly has therefore not

shown that she would have been permitted to withdraw her guilty plea—that is, that the results of the proceeding would have been any different. Ms. Mattingly therefore fails to satisfy *Strickland*'s second prong and her § 2255 claim premised on failure to file a motion to withdraw guilty plea fails. *See Rice*, 450 F. App'x at 748.

  C. *Otherwise Failing to Advocate*

  As previously stated, in her final § 2255 ground, Ms. Mattingly contends that Mr. Steed was otherwise an ineffective advocate on her behalf with respect to July 27, 2022 change of plea hearing and February 14, 2024 sentencing [Doc. 62, p. 7 (Ground Three); Doc. 95, 1]. Specifically, Ms. Mattingly alleges that defense counsel was ineffective for failing to seek a Guideline sentence and arguing that twelve years was something "[she] wanted and should get because of [her] life trauma." [Doc. 62, 7]; *see also* [Doc. 95].

  As previously stated, Ms. Mattingly's Plea Agreement included a stipulated term of imprisonment of twelve to fifteen years. [Doc. 48]. Upon acceptance by the district court, the stipulated sentence "binds" the court. Fed. R. Crim. P. 11(c)(1)(C). Thus, arguing for a Guideline sentence, or any sentence below twelve years, "would have been futile" and "counsel's failure to make such an argument was neither deficient nor prejudicial." *United States v. Garcia*, 413 F. App'x 57, 60 (10th Cir. 2011). Rather, defense counsel's advocacy for a twelve-year sentence—the lowest possible sentence available under the Plea Agreement—was objectively reasonable.

  Insofar as Ms. Mattingly contends that she did not "want" the twelve-year sentence, it is fundamental that she, as the defendant, possessed the ultimate authority as to whether to plead guilty pursuant to the Plea Agreement, which included a minimum twelve-year sentence. *See Bonney v. Wilson*, 754 F.3d 872, 883 (10th Cir. 2014). Further, Ms. Mattingly admits that, prior to, or during the sentencing hearing, she did not request a Guidelines sentence or personally ask the court to withdraw

her guilty plea.  Rather, during the February 14, 2024 sentencing hearing, Ms. Mattingly requested a twelve-year term of imprisonment.  [Doc. 68, 18-21].

Ms. Mattingly also criticizes defense counsel for failing to include the PREA incident that occurred at Cimarron in sentencing materials.  However, as previously stated, the court sentenced Ms. Mattingly to the lowest possible sentence pursuant to the Plea Agreement's stipulated sentence.  Accordingly, Ms. Mattingly cannot demonstrate prejudice as a result of counsel's failure to raise the issue as required by *Strickland*'s second prong.

Finally, insofar as Ms. Mattingly contends that she was under the influence of methamphetamine during her February 14, 2024 sentencing and Mr. Steed was somehow constitutionally ineffective in this regard, Ms. Mattingly's belated claim of intoxication lacks credibility.[13]  During the February 14, 2024 sentencing hearing, the court specifically questioned Ms. Mattingly regarding her prior drug use and, in response to a question as to whether her mind had cleared from the effects of methamphetamine during her time in pretrial detention, Ms. Mattingly responded, "Yes, Your Honor, very. . . .  I've been on regular medicine now for two years I take every single day and *I'm finally clear of all drugs out of my system*."  [Doc. 68, 20 (emphasis added)].  Further, having observed Ms. Mattingly during the sentencing hearing, the court had no concerns that she was under the influence.  Mr. Steed also testified that, at the time of sentencing, he had no concerns regarding Ms. Mattingly's drug use.  Given the contemporaneous evidence that Ms. Mattingly was not under the influence, Ms. Mattingly's statements during the September 9 hearing lack credibility.

D.     *Conclusion*

The court is aware that, on first impression, a stipulated sentence of twelve to fifteen *years* for a defendant with a Guideline range of twelve to eighteen *months* appears objectionable.  However,

---

[13] Ms. Mattingly did not testify that she was under the influence of methamphetamine during the July 27, 2022 change of plea hearing.

upon further inquiry, it is clear that the twelve to eighteen month Guideline range was illusory. The range was available to Ms. Mattingly only by virtue of pleading guilty to the Information—an option only available pursuant to the Rule 11(c)(1)(C) Plea Agreement. Had Ms. Mattingly plead guilty to any count as charged in the Indictment, or proceeded to trial, she would have faced the possibility of life imprisonment. Given the steep sentencing exposure and the strength of the government's evidence, the court finds and concludes that Mr. Steed's counsel with respect to the Rule 11(c)(1)(C) Plea Agreement—which ultimately resulted in a term of imprisonment of the lowest possible sentence pursuant to the Agreement—fell well within the range of reasonable assistance. Nor has Ms. Mattingly demonstrated prejudice as a result of any asserted deficiency.

### Certificate of Appealability

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicate[s] which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253(c)(3). That standard demands that the issues raised be debatable among reasonable jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the court denies a certificate of appealability as Ms. Mattingly has not made a substantial showing of the denial of a constitutional right and, further, the record is devoid of any authority suggesting that reasonable jurists would resolve the issues in this case differently.

### Conclusion

WHEREFORE, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 62] of defendant/petitioner Ashton Nikoel Mattingly is denied.

IT IS FURTHER ORDERED that the court denies a certificate of appealability because Ms. Mattingly has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED this 15th day of December, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE